Miller v. USA; Wysocki                    CV-97-122-SD 01/12/98
                    UNITED STATES DISTRICT COURT FOR THE

                        DISTRICT OF NEW HAMPSHIRE


Robert Thomas Miller;
Cassandra Miller

        v.                              Civil No. 97-122-SD

United States of America;
Michael J. Wysocki


                            O R D E R

        This civil rights action alleges that federal agent Michael

Wysocki arrested plaintiff Robert Miller without probable cause

in violation of his Fourth Amendment right to be free of

unreasonable seizures.  Presently before the court is defendant

Wysocki's motion to dismiss, to which plaintiff objects.


                            Background

        In 1992 an unknown individual or individuals using the names

of Peter E. Chestnut, Thomas R. Curran, and Clyde Adkins opened

checking accounts in Oklahoma using false social security account

numbers in violation of Title 42, United States Code, section 408

(a)(7)(B).  Michael Wysocki, a special agent for the Federal

Bureau of Investigation in Oklahoma, was assigned to investigate

the offenses.  After examining surveillance photos and bank

records from the unlawful accounts, Wysocki filed a complaint and supporting affidavit in the United States District Court for the Northern District of Oklahoma against plaintiff Robert Miller. A magistrate issued an arrest warrant, and in June 1994 plaintiff Miller was arrested. Miller was released from custody three days later, and the charges against him were dropped.

## Discussion

Agent Wysocki seeks summary judgment for the constitutional claims* on the ground of qualified immunity, which protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); St. Hilaire v. City of Laconia, 71 F.3d 20, 22 (1st Cir. 1995), cert. denied, 116 S. Ct. 2548, ___ U.S. ___ (1996). The doctrine "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" Rivera v. Murphy, 979 F.2d 259, 263 (1st Cir. 1992) (quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991)). In a false arrest case, "the

---

*Miller brought this case against Wysocki under 42 U.S.C. § 1983. However, since Wysocki is a federal agent, plaintiff's case is more properly brought under Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 398 (1971).

question normally is whether the arresting officer could reasonably believe that the information he or she possessed constituted probable cause." Lallemand v. University of Rhode Island, 9 F.3d 214, 215 (1st Cir. 1993).

The court finds that it was reasonable for Agent Wysocki to believe that the information he possessed constituted probable cause to arrest plaintiff Miller. Wysocki began investigating by examining bank records and other information about the suspect(s) provided by several banks where unlawful accounts were opened. Included in that information were two separate Wisconsin driver's licenses issued to "Peter E. Chestnut" and "Thomas Curran" and a bank surveillance photo of the suspect conducting a transaction on one of the unlawful accounts. Upon examining this information, Wysocki concluded that one individual using different aliases opened all the unlawful accounts. The two driver's licenses and the surveillance photos were shown to Reginald Van Eekeren, who identified the suspect as his brother-in-law, "Robert T. Miller." Van Eekeren's wife Adrian told Wysocki that Miller and Van Eekeren's sister Bernadette resided in California. Consequently, Wysocki inquired to the California Department of Motor Vehicles whether a driver's license had been issued to a "Robert T. Miller." The California DMV provided Wysocki with a driver's license issued to "Robert T. Miller," the

3

plaintiff in this case. Upon comparing the plaintiff's California driver's license with the suspect's two Wisconsin driver's licenses, Wysocki concluded there was probable cause to believe the plaintiff was the suspect.

Agent Wysocki's conclusion was reasonable. Wysocki had no reason to doubt the reliability of the Van Eekerens' claim that the suspect was a "Robert T. Miller" residing in California. According to the California DMV, plaintiff was the only "Robert T. Miller" residing in California. In addition, plaintiff's California driver's license was a reasonably close match to the suspect's two Wisconsin driver's licenses. The photographs were similar, and any differences could be explained by the time that elapsed between the seven-years-younger California photo and the older Wisconsin photos. All three licenses characterized the driver with brown hair and blue eyes. The other descriptive data deviated minimally from one license to the next, with less than 18 months' difference in the birth dates, less than 20 pounds in the weights, and less than two inches in the heights. Given this, it was reasonable for Wysocki to conclude that the "Robert T. Miller" in the California driver's license was the suspect in the two Wisconsin driver's licenses who had been identified by the Van Eekerens' as a "Robert T. Miller" living in California.

Plaintiff argues that Wysocki deliberately withheld information from the magistrate in his application for a warrant for plaintiff's arrest. The question becomes whether the withheld information, if disclosed, would have undercut probable cause. Lallemand, supra, 9 F.3d at 216. First, plaintiff claims that Wysocki failed to disclose that the address listed on the plaintiff's California driver's licence was different than the address the Van Eekerens said belonged to the suspect. However, that discrepancy would not have undercut probable cause, since the suspect was clearly using multiple identities and addresses. Second, plaintiff claims that Wysocki misled the magistrate into believing that the plaintiff's California license was shown to the Van Eekerens, who identified plaintiff as their brother-in-law, the suspect "Robert T. Miller." However, in Wysocki's affidavit for the magistrate, he says, "the man in [the bank] surveillance photograph and in the copies of the Wisconsin drivers licenses . . . was identified for FBI agents as being Robert T. Miller by [the Van Eekerens]." Wysocki Affidavit at 13 (Attachment 5 to Defendant's Memorandum). In this sentence, Wysocki explicitly states that only the surveillance photo and Wisconsin driver's licenses formed the basis for Van Eekeren's identification; there is no implication that plaintiff's California driver's license was shown to Van Eekeren.

5

Lastly, according to plaintiff, Wysocki should have conducted further investigation, which would have established that the plaintiff was not the suspect "Robert T. Miller." First, plaintiff claims that Wysocki should have conducted surveillance of plaintiff's residence to determine whether plaintiff's wife, Cassandra Miller, matched photos of the suspect's wife, Bernadette "Miller." Furthermore, Wysocki knew plaintiff had filed for bankruptcy, and if he had investigated further he would have known that plaintiff was physically present in United States Bankruptcy Court in Manchester, New Hampshire, at the same time the suspect was conducting unlawful transactions at a bank in Oklahoma. However, before seeking arrest, it is not necessary for agents to determine guilt with certainty by exhausting all possible avenues of investigation, including any alibis the suspect may have. Rather, the standard for arrest is probable cause, which is "a fluid concept--turning on the assessment of probabilities in particular factual contexts." United States v. Meade, 110 F.3d 190, 197-98 (1st Cir. 1997) (quoting Illinois v. Gates, 462 U.S. 213, 232 (1983)). Thus, once investigation reveals that the suspect is probably guilty, the agent may cease the investigation and seek an arrest. Requiring a higher standard of guilt would frustrate law enforcement efforts. Thus, once Wysocki determined that the

6

plaintiff was probably the suspect "Robert T. Miller," Wysocki was under no duty to conduct surveillance of the plaintiff's wife or inquire whether the plaintiff was in bankruptcy court when the suspect was conducting unlawful bank transactions in Oklahoma.

Agent Wysocki therefore is entitled to qualified immunity from the plaintiff's constitutional claims.

Further, the state law claims against Wysocki must be dismissed because 28 U.S.C. 2679(a) provides for the "absolute immunity of governmental employees for acts committed within the scope of their employment that amounted to common law torts." Nasuti v. Scannell, 906 F.2d 802, 804 (1st Cir. 1990). The exclusive remedy is against the United States. Wysocki was acting within the scope of his employment, and the state tort claims against him must be dismissed.

Lastly, Cassandra Miller's constitutional claims must be dismissed because the First Circuit has prohibited such derivative constitutional claims. Soto v. Flores, 103 F.3d 1056 (1997). Cassandra Miller claims loss of the "full care, comfort, companionship and society of her husband," Complaint ¶ 57. However, in Soto, the First Circuit said, "There is no absolute constitutional right to enjoy the companionship of one's family members free from all encroachments by the state." Id. at 1062.

7

Because Cassandra Miller was not deprived of a constitutional right, she has no constitutional claim on her own behalf.

## Conclusion

For the foregoing reasons, defendant Wysocki's motion to dismiss (document no. 5) must be and herewith is granted.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

January 12, 1998

cc:    Bruce E. Kenna, Esq.
       Gretchen Leah Witt, Esq.