Jannette E. DEL PILAR
SALGADO, Plaintiff

v.

**ABBOTT LABORATORIES,
et als., Defendant.**

No. 06–1465 (DRD).

United States District Court,
D. Puerto Rico.

Oct. 23, 2007.

Luis E. Pabon–Roca Clarisa Sola–Gomez, Faccio & Pabon Roca, San Juan, PR, for Plaintiff.

Eileen Marie Garcia–Wirshing, Jose F. Benitez–Mier, Jorge L. Capo–Matos, O'Neill & Borges, San Juan, PR, Luis A. Gonzalez–Perez, L.A. Gonzalez Law Office P.A., Orlando, FL, for Defendants.

### AMENDED OPINION AND ORDER NUNC PRO TUNC

DANIEL R. DOMINGUEZ, District Judge.

The instant case arises out of Plaintiff, Jannette E. Del Pilar's claims against the Defendants, Abbott Laboratories and Cesar Ruiz, his wife and the Conjugal Partnership comprised by them, for employment discrimination and retaliation based on sex and political affiliation under Title VII of the Civil Rights Act, 42 U.S.C.A. §§ 2000e–2000e–15, Puerto Rico's Law No. 100 of June 30, 1959, P.R. Laws Ann., tit. 29, §§ 146–151 ("Law 100"), Law No. 69 of July 6, 1985, P.R. Laws Ann., tit. 29, §§ 1321–1341 ("Law 69"), Law No. 115 of December 20, 1991, P.R. Laws Ann., tit. 29, §§ 194–194(b) ("Law 115"), and Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann., tit. 31, § 5141, 5142.

Pending before the Court is co-defendants', Motions for Summary Judgment (Docket Nos. 36 and 39), and Plaintiff's, *Joint Memorandum of Law in Opposition to Cesar Ruiz, Mariana Perez Romero and the Conjugal Partnership's Motion for Summary Judgment and Memorandum of Authorities and Abbott's Motion for Summary Judgment and Memorandum of Law in Support thereof* (Docket No. 50). On April 9, 2007 the Court referred the pending motions to Magistrate Judge Marcos E. Lopez (Docket No. 66) and on September 11, 2007, Magistrate Judge Lopez, entered a Report and Recommendation (Docket No. 75). The Magistrate Judge recommended that both Defendants' Motions for Summary Judgment be **GRANTED.** Consequently, on September 18, 2007, co-defendant Abbott Laboratories filed a *Partial Objection to Report and Recommendation* (Docket No. 80) and on September 21, 2007, Plaintiff filed its objections to the Magistrate Judge's Report and Recommendation (Docket No. 81).

After reviewing all of the pending motions and reviewing *de novo* the portions of the Magistrate Judge's Report and Recommendation to which the Parties have expressed objections, the Court agrees *in toto*, with the findings and recommendations made by Magistrate Judge Marcos E. Lopez. The Court finds that after taking into consideration all of Plaintiff's and

Defendant's objections, the Court has reached the same conclusions as those reached by the Magistrate Judge in his Report and Recommendation. For the reasons stated below, the Court AC-CEPTS and ADOPTS by reference, the Magistrate's *Report and Recommendation* (Docket No. 21), to the instant Order. Consequently, the Defendants' Motions for Summary Judgment (Docket No. 36 and 39) are hereby **GRANTED.**

## I. STANDARD OF REVIEW

The District Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B) (1993); FED. R.CIV.P. 72(b); Rule 72(a), Local Rules, District of Puerto Rico. *See Mathews v. Weber,* 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). An adversely affected party may contest the Magistrate's report and recommendation by filing its objections within ten (10) days after being served a copy thereof. *See* Local Rule 72(d); FED.R.CIV.P. 72(b). Moreover, 28 U.S.C. § 636(b)(1) (1993), in pertinent part, provides that:

> Within ten days of being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. **A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.** A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.

*(Emphasis ours ).*

■ If no objections are filed against a Magistrate Judge's Report and Recommendation, the Court, in order to accept the unopposed R & R, needs only satisfy itself by ascertaining that there is no "plain error" on the face of the record. See *Douglass v. United Servs. Auto, Ass'n,* 79 F.3d 1415, 1419 (5th Cir., 1996)(en banc)(extending the deferential "plain error" standard of review to the unobjected legal conclusions of a magistrate judge); *Nettles v. Wainwright,* 677 F.2d 404, 410 (5th Cir., 1982)(en banc)(appeal from district court's acceptance of unobjected findings of magistrate judge reviewed for "plain error"); *Nogueras–Cartagena v. United States,* 172 F.Supp.2d 296, 305 (D.P.R., 2001)("Court reviews [unopposed] Magistrate's Report and Recommendation to ascertain whether or not the Magistrate's recommendation was clearly erroneous")(adopting the Advisory Committee note regarding FED.R.CIV.P. 72(b)); *Garcia v. I.N.S.,* 733 F.Supp. 1554, 1555 (M.D.Pa., 1990)("when no objections are filed, the district court need only review the record for plain error").

"Absent objection, ... [a] district court ha[s] a right to assume that [the affected party] agree[s] to the magistrate's recommendation." *Templeman v. Chris Craft Corp.,* 770 F.2d 245, 247 (1st Cir.1985), *cert. denied,* 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 556 (1985)(*emphasis ours* ). Moreover, "failure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objections are precluded on appeal." *Davet v. Maccarone,* 973 F.2d 22, 30–31 (1st Cir., 1992). *See also Sands v. Ride-film Corp.,* 212 F.3d 657, 663 (1st Cir. 2000); *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–151 (1st Cir.1994)(holding that objections are required when challenging findings actually set out in magistrate's recommendation, as well as magistrate's failure to make additional findings); *Lewry v. Town of Standish,* 984 F.2d 25, 27 (1st Cir.1993) (stating that "[o]bjection

to a magistrate's report preserves only those objections that are specified"); *Keating v. Secretary of H.H.S.*, 848 F.2d 271, 275 (1st Cir.1988); *Borden v. Secretary of H.H.S.*, 836 F.2d 4, 6 (1st Cir., 1987) (holding that appellant was entitled to a de novo review, "however he was not entitled to a de novo review of an argument never raised"). *See also United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 605 (1st Cir.1980).

In the instant case both parties have timely lodged objections, hence our standard of review is *de novo* as to those portions objected. 28 U.S.C. 636(b)(1).

## II. Summary Judgment Standard

■ Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Pursuant to the mandate of the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law." *Vega–Rodriguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 178 (1st Cir.1997). After the moving party has satisfied this burden, the burden shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." *Cortes–Irizarry v. Corporacion Insular*, 111 F.3d 184, 187 (1st Cir.1997). A fact will be deemed "material" if it potentially could affect the outcome of the suit. *Id.* Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resist-

ing summary judgment, could resolve the dispute in that party's favor." Id.

■ The non-movant must affirmatively show that "sufficient evidence supporting the claimed factual dispute [exists] to require a jury or judge to resolve the parties' differing versions of truth at trial." *First Nat. Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968), reh'g denied, 393 U.S. 901, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968). The non-movant cannot rest upon mere allegations or denial of the pleadings. Fed.R.Civ.P. 56(e). Local Rule 56 for the District of Puerto Rico, clearly states that if a party does not oppose a motion for summary judgment "[a]ll material facts set forth in the statement required to be served by the moving party shall be deemed to be admitted." Local Rule 56. This does not mean that summary judgment will be granted automatically, just because the defendant failed to file an opposition. *Mendez v. Banco Popular de Puerto Rico*, 900 F.2d 4, 7 (1st Cir.1990). "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P.56(e); *see also NEPSK, Inc. v. Town of Houlton*, 283 F.3d 1, 7–8 (1st Cir.2002)(*Emphasis added*). Although summary judgment is not granted automatically "the non-moving party does waive the right to object to the material facts set forth by the movant." *Feliciano Rivera v. Medical & Geriatric Admin. Serv.*, 254 F.Supp.2d 237, 239 (D.P.R.2003). However, notwithstanding that there is no opposition to a summary judgement, the Court must entertain the motion on the merits and may not grant the same as a sanction even if there is no opposition on file. *De La Vega v. San Juan Star*, 377 F.3d 111(1st Cir.2004).

■ At all times during the consideration of a motion for summary judgment,

the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood ...". *Greenburg v. Puerto Rico Mar. Shipping Auth.,* 835 F.2d 932, 936 (1st Cir.1987). In fact, "[o]nly if the record, viewed in [this] manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." *Cadle Co. v. Hayes,* 116 F.3d 957, 960 (1st Cir.1997).

■ Issues of motive and intent as to the conduct of any party will normally preclude the Court from granting summary judgment. *Mulero–Rodriguez v. Ponte, Inc.,* 98 F.3d 670, 677 (1st Cir.1996) (reversing summary judgment and emphasizing that "determinations of motive and intent ... are questions better suited for the jury") (*internal quotation marks omitted*) (*citation omitted*); *see also Tew v. Chase Manhattan Bank,* N.A., 728 F.Supp. 1551, 1555 (S.D.Fla., 1990) ("Certain issues such as fraud, intent, and knowledge lend themselves to trial, rather than summary judgment. These matters can often only be proved by reliance upon circumstantial evidence except in the rare case where there is uncontroverted proof of a 'smoking gun.' "). However, "even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences [or] unsupported

speculation." *Ayala–Gerena v. Bristol Myers–Squibb Co.,* 95 F.3d 86, 95 (1st Cir.1996).

### III. Magistrate Judge's Report and Recommendation

### A. Title VII claims against Cesar Ruiz, his wife and the conjugal partnership constituted by them

■ As to Plaintiff's Title VII claims against Cesar Ruiz, his wife and the conjugal partnership constituted by them, the Magistrate Judge recommended that since Mr. Ruiz was not an employer as defined under Title VII, Defendants' motions for summary judgment should be granted as to the Title VII claims against Cesar Ruiz, his wife and their conjugal partnership constituted by them.

The Magistrate Judge found that although

> the Court of Appeals for the First Circuit has not directly addressed the issue of individual liability under Title VII, numerous Circuit Courts of Appeals have held that no individual liability can be attached to agents or supervisors under Title VII.

*See* Docket No. 75, pg. 17 (*citing Serapión v. Martínez,* 119 F.3d 982 (1st Cir.1997) (declining to address the issue of individual liability); *Gastineau v. Fleet Mortgage Corp.,* 137 F.3d 490, 493 (7th Cir.1998); *Lissau v. Southern Food Serv., Inc.,* 159 F.3d 177, 180–81 (4th Cir.1998) (finding no individual liability under Title VII)). Furthermore, the Magistrate Judge found that "[n]umerous cases in the District of Puerto Rico have already determined that no personal liability exists under Title VII and that individual defendants are not liable under Title VII." [1] *See Id.* (*emphasis ours*)

---

1. The Court merely adds that the District Court of Puerto Rico is merely following the majority of Circuit Courts of the nation. *See*

*Flamand v. American International Group, Inc.,* 876 F.Supp. 356, 361–364 (D.P.R.1994)(containing reasoning to decline

(*citing Rivera Sánchez v. Autoridad de Energía Eléctrica*, 360 F.Supp.2d 302, 317 (D.P.R.2005); *Gómez González v. Guidant Corp.*, 364 F.Supp.2d 112, 115 (D.P.R.2005); *Vargas v. Fuller Brush Co. of Puerto Rico*, 336 F.Supp.2d 134, 138 (D.P.R.2004); *Vélez–Sotomayor v. Progreso Cash & Carry, Inc.*, 279 F.Supp.2d 65 (D.P.R.2003); *Padilla Cintrón v. Rosselló González*, 247 F.Supp.2d 48 (D.P.R.2003); *López Hernández v. Municipality of San Juan*, 206 F.Supp.2d 243 (D.P.R.2002); *Olivo González v. Teachers' Retirement Board*, 208 F.Supp.2d 163 (D.P.R.2002); *Castro Ortiz v. Fajardo*, 133 F.Supp.2d 143 (D.P.R.2001); *Acevedo Vargas v. Colón*, 2 F.Supp.2d 203, 206–07 (D.P.R.1998); *Pineda v. Almacenes Pitusa, Inc.*, 982 F.Supp. 88, 92–93 (D.P.R.1997); *Hernández v. Wangen*, 938 F.Supp. 1052, 1065 (D.P.R.1996)).

Since the District Court of Puerto Rico is following, the majority of Circuits in the nation, the Magistrate Judge concluded that Defendants' motions for summary judgment should be granted as to the Title VII claims against Cesar Ruiz, his wife and their conjugal partnership constituted by them.

### B. Title VII hostile work environment-sexual harassment claims against Abbott Laboratories

As to Plaintiff's Title VII hostile work environment-sexual harassment claims against Abbott Laboratories, the Magistrate Judge recommended that,

[s]ince Del Pilar has not presented material issues of fact to justify submitting her sexual harassment hostile work environment claim against Abbott to a trier of fact, it is therefore recommended that Abbott's request for summary judgment

personal employee liability); *see also Ramos v. Puerto Rico Police Department*, 392 F.Supp.2d 167, 179 n. 6 (D.P.R.2005)(containing a compendium of Circuit and District

as to the Title VII sexual harassment hostile work environment claim be GRANTED.

*See* Docket No. 75, pg. 33 (*emphasis ours* ).

■ The Magistrate Judge stated that [t]o succeed in a hostile work environment claim, a plaintiff must prove: '(1) that she (or he) is a member of a protected class; (2) that she (or he) was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) some basis for employer liability has been established.'

*See* Docket No. 75, pgs. 20–21 (emphasis ours) (*quoting O'Rourke v. City of Providence*, 235 F.3d 713, 728 (1st Cir.2001)) (*citing Faragher v. City of Boca Raton*, 524 U.S. 775, 787–89, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 20–23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); and *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65–73, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). The Magistrate Judge further stated that "[t]he focus of hostile work environment cases is generally on the fourth and fifth prongs mentioned above". *See Id.* (*emphasis ours* ) (*citing O'Rourke*, 235 F.3d at 728).

■ In order to better analyze Plaintiff's allegations and/or claims, the Magis-

Court cases declining to exercise federal jurisdiction over the individual liability of supervisors and employees under Title VII.)

trate Judge in an organized fashion, divided Plaintiff's allegations/claims into three categories:

> (a) remarks addressed or actions directed to Del Pilar made in her presence; (b) remarks addressed or actions directed to Del Pilar made outside of her presence; and (c) generic remarks or actions not specifically targeted or referring to Del Pilar.

*See Id.,* at pg. 22.

In regards to the remarks addressed or actions directed to the Plaintiff in her presence, the Magistrate Judge concluded that

> [a]lthough these remarks made, or actions taken, by Ruiz may be objectionable, they do not rise to the level of severity or pervasiveness required to alter Del Pilar's terms and conditions of employment and thus, sustain an actionable sexual harassment hostile work environment claim. In particular, Del Pilar fails to show that these remarks were made by Ruiz in a way that discriminated against plaintiff because of her sex. *See Landrau Romero v. Caribbean Restaurants, Inc.,* 14 F.Supp.2d 185 (D.P.R.1998)

*See* Docket No. 75, pg. 23–24.

Moreover, the Magistrate Judge stated that

> courts have consistently rejected sexual harassment hostile work environment claims involving facts much more despicable and offensive than those upon which Del Pilar relies to support her claim against Abbott.

*See Id.,* at pg. 25 (*citing Quiñones v. Puerto Rico Hosp. Supply, Inc.,* 307 F.Supp.2d 352, 359-60 (D.P.R.2004)); *Shepherd v. Comptroller of Pub. Accounts,* 168 F.3d 871, 872, 874 (5th Cir.1999); *Adusumilli v. City of Chicago,* 164 F.3d 353, 357, 361–62 (7th Cir.1998) *cert. denied,* 528 U.S. 988, 120 S.Ct. 450, 145 L.Ed.2d 367 (1999); *Black v. Zaring Homes, Inc.,* 104 F.3d 822, 823–24 and 826 (6th Cir.1997) *cert. denied,* 522 U.S. 865, 118 S.Ct. 172, 139 L.Ed.2d 114 (1997); *Weiss v. Coca–Cola Bottling Co.,* 990 F.2d 333, 337 (7th Cir.1993); *Baskerville v. Culligan Int'l Co.,* 50 F.3d 428, 430 (7th Cir.1995); *Hopkins v. Baltimore Gas & Elec. Co.,* 77 F.3d 745, 753 (4th Cir.1996); *Koelsch v. Beltone Elec. Co.,* 46 F.3d 705 (7th Cir.1995).

In regards to the remarks or actions directed to the Plaintiff but made outside of her presence, the Magistrate Judge concluded that they, as well as the remarks addressed or actions directed to the Plaintiff in her presence, were insufficient to trigger a sexual harassment hostile work environment claim. *See* Docket No. 75, pg. 30.

The Magistrate Judge concluded that since "some of the remarks (*e.g.,* 'the banker', 'Jane of the Jungle') allegedly made by Ruiz are not per se sexual in nature, have no sexual connotation, and are not gender-related or based upon sex ... by their very nature fail to support a hostile work environment claim based on sexual harassment." *See Id.,* at pg. 29 (*citing Cardona v. Aramark Services Puerto Rico,* 9 F.Supp.2d 92, 97 (D.P.R.1998)(rude comments which are gender neutral do not imply discriminatory attitude) *and Gartman v. Gencorp Inc.,* 120 F.3d 127, 131 (8th Cir.1997)).

The Magistrate Judge further stated that,

> 'although ... a plaintiff need not hear or see every incident of harassing conduct in order for that incident to 'count' toward establishing the level of workplace hostility, it is well established that slurs and insults heard second-hand do not carry the same severity as those made to the employee's face. The fact that plaintiff's case so extensively rests on

conduct related to her by others further mitigates against a finding that her workplace environment was objectively hostile.'

See Id., at pg. 29–30 (quoting Hudson v. Norfolk Southern Ry. Co., 209 F.Supp.2d 1301, 1331, n. 10 (N.D.Ga.2001) and citing Mitchell v. Carrier Corp., 954 F.Supp. 1568, 1577 (M.D.Ga.1995)).

In regards to the generic remarks or actions not specifically targeted or referring to Plaintiff, the Magistrate Judge concluded that although many of the comments mentioned in Plaintiff's presence were "vulgar, offensive, and unprofessional" since they were "often directed to many employees in the area", said comments, "may not be sufficiently severe or pervasive to be actionable." See Docket No. 75, pg. 32 (quoting Fontanez–Nuñez v. Janssen Ortho LLC, 447 F.3d 50, 57 (1st Cir.2006)) (internal quotations omitted); see also Chamberlin v. 101 Realty, Inc., 915 F.2d 777 (1st Cir.1990) (declined to follow by Nichols v. Frank, 42 F.3d 503 (9th Cir.1994)).

Magistrate Judge stated that "not only has Del Pilar failed to provide evidence that some of these comments are based on sex discrimination or harassment ... but also that most instances of vulgarity were directed at her." See Id., at pg. 33 (citing Black v. Zaring Homes, Inc., 104 F.3d 822, 826 (6th Cir.1997))

("[S]ex-based comments need not be directed at a plaintiff in order to constitute conduct violating Title VII"; however, where most of sex-based comments overheard in meetings were not directed at plaintiff, conduct was "merely offensive" and not hostile).

The Magistrate Judge further stated that

[a]lthough we recognize that the 'line between a merely unpleasant working environment ... and a hostile or deeply repugnant one' may be difficult to discern, we must also keep in mind that Title VII does not attempt 'to purge the workplace of vulgarity.'

See Id. (emphasis ours) (quoting Baskerville v. Culligan Int'l Co., 50 F.3d 428, 430–431 (7th Cir.1995) and citing Lee–Crespo v. Schering–Plough Del Caribe, Inc., 354 F.3d 34, 46–47 (1st Cir.2003) ("[A] supervisor's unprofessional managerial approach ... [is] not the focus of the discrimination laws.")).

After reviewing all of Plaintiff's allegations/claims in the light most favorable to her, the Magistrate Judge concluded that Plaintiff's

claims fail to meet, at a minimum, the fourth prong of the hostile work environment/sexual harassment standard (i.e., that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment). Since Del Pilar has not presented material issues of fact to justify submitting her sexual harassment hostile work environment claim against Abbott to a trier of fact, it is therefore recommended that Abbott's request for summary judgment as to the Title VII sexual harassment hostile work environment claim be GRANTED.

See Docket No. 75, pg. 33.

### C. Title VII politically hostile work environment claim against Abbott

██ As to Plaintiff's Title VII political hostile work environment claim against Abbott Laboratories, the Magistrate Judge recommended that pursuant to Padilla Román v.Hernández Pérez, 381 F.Supp.2d 17, 30 (D.P.R.2005), Defendants' request

for summary judgment as to this claim should be GRANTED.

The Magistrate Judge stated that in *Padilla Román v.Hernández Pérez*, 381 F.Supp.2d 17, 30 (D.P.R.2005), this court held that political affiliation discrimination claims are not cognizable under Title VII, noting that Title VII only recognizes five claims of discrimination within the employment context, that is, discrimination because of the individual's race, color, religion, sex or national origin. See 42 U.S.C.A. § 2000(e)–2.

*See* Docket No. 75, pg. 34.

Agreeing with the District Court's decision in *Padilla Román*, the Magistrate Judge stated that the Plaintiff could not maintain a claim for politically hostile work environment against co-defendant Abbott Laboratories under Title VII.

### D. Title VII retaliation claims against Abbott.

As to Plaintiff's Title VII retaliation claims against Abbott Laboratories, the Magistrate Judge recommended that defendant, Abbott Laboratories', request for summary judgment as to said claims be GRANTED.

▮ The Magistrate Judge stated that in order

[t]o establish a *prima facie* case of retaliation, the plaintiff must show that: (1) he/she engaged in protected conduct; (2) he/she suffered an adverse employment action; and (3) a casual connection existed between the protected conduct and the adverse action. *Id.* Once the plaintiff satisfies the *prima facie* burden, the

**2.** The Court respects the judgment of the Magistrate Judge, but on first impression, the Court had some resistance since the retaliation alleged is not contemporary to the protected activity and the alleged actions occurred more than a one year after the protected activity. *See Calero–Cerezo v. U.S.*

defendant must produce a legitimate, nondiscriminatory reason for the adverse action. The ultimate burden then falls on the plaintiff to show that the employer's articulated reason was, in fact, a pretext covering up retaliation. *Wright v. CompUSA, Inc.*, 352 F.3d 472, 478 (1st Cir.2003).

*See* Docket No. 75, pg. 35 (*emphasis ours* )(*citing* 42 U.S.C. § 2000e–3(a)).

In order to reach the aforementioned recommendation, the Magistrate Judge, pursuant to Plaintiff allegations, "address[ed] the alleged retaliatory acts that occurred on 2005, before Del Pilar commenced the medical leave, separately from those that allegedly occurred after she was reinstated on 2006."

### a. Alleged Retaliatory Acts in 2005 Prima Facie for a retaliation claim

▮ In regards to Plaintiff's alleged retaliatory acts of 2005, before Plaintiff commenced her medical leave, the Magistrate Judge found that Plaintiff did meet the first prong of the *prima facie* retaliation claim. *See* Docket No. 75, pg. 37. The Magistrate Judge states that Plaintiff meets the first prong of the *prima facie* retaliation claim by asserting that the "alleged retaliatory actions (as well as the retaliatory acts that occurred on 2006) occurred as a result of her October 2004 complaint regarding Ruiz's alleged conduct", being said complaint a protected activity under Title VII.[2] *See* Docket No. 75, pg. 37 (*citing* Docket No. 52, Exhibit A, Del Pilar's Statement Under Penalty of Perjury, ¶¶ 71–73, *and Valentin–Almeyda*

*Dept. of Justice*, 355 F.3d 6 (1st Cir.2004)(Finding that three and four month periods are insufficient to establish a causal connection based on temporal proximity.); *see also Mesnick v. General Elec., Co.*, 950 F.2d 816, 828 (1st Cir.1991).

*v. Municipality of Aguadilla*, 447 F.3d 85, 94 (1st Cir.2006) ("Protected conduct includes not only the filing of administrative complaints ... but also complaining to one's supervisors"); *Benoit v. Technical Mfg. Corp.*, 331 F.3d 166, 175 (1st Cir. 2003); *Vidal v. Ramallo Bros. Printing, Inc.*, 380 F.Supp.2d 60, 63 (D.P.R.2005)).

In regards to the second prong of the prima facie retaliation claim, the Magistrate Judge concluded that

> even though some doubts may be cast upon the significance of the adverse employment actions alleged by Del Pilar, these acts, coupled with the intimidatory remarks allegedly made regarding the potential consequences to those who complained against Ruiz, are sufficient to satisfy the second prong of the *prima facie* retaliation claim.

*See* Docket No. 75, pg. 39.[3]

▇▇▇ In order for the Magistrate Judge to determine that Plaintiff met the second prong of the *prima facie* retaliation claim, the Magistrate Judge considered the fact that pursuant to *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345(2006),

> 'a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'

*See Id.*, at pg. 38(*quoting Burlington*, 126 S.Ct. at 2416). Therefore, the Magistrate Judge state that "[t]he alleged retaliatory action must be material, producing a significant, not trivial, harm." *See Id.*, (*citing Burlington*, 126 S.Ct. at 2415, *and Carmo-*

*na–Rivera v. Commonwealth of P.R.*, 464 F.3d 14, 19 (1st Cir.2006)).

▇▇▇ Furthermore, the Magistrate Judge stated that in order for

> an act to be an adverse employment action, the employer must have either (1) taken something of consequence from the employee by, for example, demoting him, reducing his salary, or divesting him of *significant* duties, or (2) withheld an accouterment of the employment relationship.

*See* Docket No. 75, pg. 38 (*emphasis on original*) (*quoting Blackie v. Maine*, 75 F.3d 716, 725 (1st Cir.1996)) (*internal quotations omitted*). Therefore, after reviewing Plaintiff's retaliatory allegations the Magistrate Judge concluded that Plaintiff met the second prong of the *prima facie* retaliatory claim.

In regards to the third prong of the *prima facie* retaliation claim, the Magistrate Judge concluded that after

> [v]iewing the entire record in the light most hospitable to Del Pilar and indulging all reasonable inferences in her favor, as the court is required to do at summary judgment stage, the court determines that Del Pilar has furnished sufficient evidence to satisfy the third prong of the *prima facie* retaliation claim. Thus, Del Pilar has established a *prima facie* claim of retaliation.

*See* Docket No. 75, pg. 41 (*emphasis ours*).

▇▇▇ The Magistrate Judge stated that

> Title VII requires a plaintiff to show a causal connection between his or her protected conduct and the adverse employment action. Close temporal proximity between two events may give rise

3. Notwithstanding, the Court deems necessary to state that the only one who allegedly bragged about what had allegedly happened to an employee who had complained about Mr. Ruiz, was Mr. Ruiz himself. *See* Docket No. 52, Exhibit A, ¶ 96.

to an inference of causal connection. *See Calero–Cerezo v. U.S. Dept. of Justice*, 355 F.3d 6, 25 (1st Cir.2004). Mere temporal proximity between an employer's knowledge of protected conduct and an adverse action may establish causation if the temporal proximity is "very close." *Id.* (*quoting Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001)); *see also Bishop v. Bell Atl. Corp.*, 299 F.3d 53, 60 (1st Cir.2002); *Bajana v. Potter*, 396 F.Supp.2d 78, 88 (D.P.R. 2005).

\* \* \* \* \* \*

In determining whether causation exists, however, courts should consider the actions taken against the employee within the overall context and sequence of events, the historical background of the decision, any departures from normal procedure, and contemporary statements by the employer's decision makers. *Vargas v. Puerto Rican–American Ins. Co.*, 52 F.Supp.2d 305, 313–14 (D.P.R.1999).

*See Id.*

Consequently, after analyzing Plaintiff's allegations in the light most favorable to her and indulging all reasonable inferences in her favor, the Magistrate Judge concluded that Plaintiff met the third prong of the *prima facie* retaliation claim. Thereby, establishing a *prima facie* claim of retaliation.

For said reason, the Magistrate Judge went on to determine whether co-defendant Abbott Laboratories had justified the alleged retaliatory actions asserting that they were motivated by legitimate business-related reasons.

### b. *Non-discriminatory reasons produced by Abbott*

■ After reviewing co-defendant's justifications the Magistrate Judge concluded

that Abbott has articulated legitimate, business-related and non-discriminatory reasons to rebut Del Pilar's prima facie case of retaliation arising from the De Góngora's actions before Del Pilar commenced her medical leave on February, 2005.

*See* Docket No. 75, pg. 43; *see also Noviello v. City of Boston*, 398 F.3d 76, 92 (1st Cir.2005) ("An allegedly retaliatory act must rise to some level of substantiality before it can be actionable") (*citing Wideman v. Wal–Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir.1998)). The Magistrate Judge found that the non-discriminatory reasons provided by Abbott were legitimate, business-related and non-discriminatory sufficient to rebut Plaintiff's prima facie case of retaliation. Specifically, the Magistrate Judge stated that in regards to De Góngora's meetings with Del Pilar, Mr. De Góngora testified in his deposition that it was his practice to have one-one-meetings on a regular basis **with all the employees** that he supervised, one of them being Del Pilar, and that he would follow-up on assignments and projects with his employees, by e-mail. *See* Docket 75, pg. 41–42; *see also* Docket No. 39, Exhibit 1, ¶ 45 and Exhibit 3 (De Góngora's Deposition Transcript, pgs. 155–56).

Furthermore, the Magistrate Judge found that in regards to

the quarrel between Pamias and Mercado, Abbott contends that Pamias made a comment about Ruiz's failure to bid him farewell, and Mercado defended Ruiz's omission. Mercado then took out a knife and threw it on the floor. As a result of Del Pilar's report of this incident, De Góngora, Vilá, Blay and Manuel García, Human Resources Supervisor, discussed the issue and made a decision to reprimand Pamias and Mercado. Del Pilar allegedly was the only decision-

maker that did not favor applying disciplinary measures. According to De Góngora, both employees reported to Del Pilar, both had been involved in the incident, both had violated Abbott's code of conduct and threatened the safety of the fellow co-workers. Therefore, De Góngora asked Del Pilar to draft a memorandum addressed to **both employees** regarding the violations to Abbott's code of conduct. Despite De Góngora's instructions, Del Pilar did not prepare the requested memorandum. *See* Docket No. 39, Exhibit 2 (Del Pilar's depo., pp. 214–231, 238 and Exhibits 13 and 14 of the deposition), Exhibit 3 (De Góngora's depo, pp. 160–168, 172–173). *See* Docket No. 75, pg. 42 (*emphasis ours*).

The Magistrate Judge further found that

[r]egarding Del Pilar's claim that De Góngora had prohibited her from communicating with her subordinates in order to perform her duties, it is an uncontested fact that De Góngora had asked her to limit her interaction with José V. Delgado (the employee who she claims she was prohibited from communicating with) because Delgado felt uncomfortable working with her. Docket No. 39, SUF and 52, ¶ 44.

*See Id.*

■■■ Notwithstanding the fact that Abbott failed to provide a legitimate, non-discriminatory reason for Plaintiff's allegation that regarding the three hours that were taken off from her sick leave period for a medical appointment, despite the fact that exempt employees do not report absences of less that four hours, the Magistrate Judge concluded that said allegation, "fails to rise to the level of a retaliation claim under Title VII." *See* Docket No. 75, pg. 43. The Magistrate Judge further stated that said alleged retaliatory action

"is not sufficiently substantial for a rational jury to find Abbott liable for retaliation." *See Id.* (*citing Noviello v. City of Boston,* 398 F.3d 76, 92 (1st Cir.2005) ("An allegedly retaliatory act must rise to some level of substantiality before it can be actionable") *and Wideman v. Wal–Mart Stores, Inc.,* 141 F.3d 1453, 1456 (11th Cir.1998)).

Therefore, the Magistrate Judge concluded that Co-defendant had articulated legitimate, business-related and non-discriminatory reasons to rebut Plaintiff's prima facie case of retaliation, the Magistrate Judge finalized its analysis by determining if Plaintiff presented sufficient evidence to prove that co-defendant's stated reason were a pretext for retaliation. *See Mesnick v. Gen. Elec. Co.,* 950 F.2d 816, 828 (1st Cir.1991).

### c. *Evidence of pretext*

In regards to whether or not Plaintiff presented sufficient evidence to prove that co-defendant's stated reason were a pretext for retaliation, the Magistrate Judge concluded that the Plaintiff "has failed to adequately present evidence that the reasons presented by Abbott are a pretext and that the real motive was to retaliate against her for having complained in October, 2004." *See* Docket No. 75, pg. 44.

■■■ The Magistrate Judge stated that "[a]t the pretext stage, the court considers the ultimate question in a retaliation case, that is, whether the plaintiff presents sufficient evidence that defendant's stated reason was a pretext for retaliation." *See Id.,* at pg. 43 (*citing Mesnick,* 950 F.2d at 828). The Magistrate Judge further stated that in order to avoid summary judgment, Plaintiff has to

submit sufficient evidence to create a genuine issue of fact with respect to two issues: (1) whether the legitimate reasons Abbott offered were not its true

reasons; and (2) whether the real reason was retaliation.

See Docket No. 75, pg. 43–44 (*citing Calero–Cerezo v. U.S. Dept. of Justice*, 355 F.3d 6, 25–26 (1st Cir.2004) *and Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 16 (1st Cir.1994)).

> In doing so ... [t]he court does not sit as a super personnel department, assessing the merits and rationality of the employer's legitimate, nondiscriminatory reasons. In evaluating pretext, the court must focus on whether the employer believed its stated reasons to be credible and reasonable, not whether the decision was wise or unwise ...

See Docket No. 75, pg. 44 FN. 35 (*emphasis ours*) (*citing Figueroa Garcia v. Lilly Del Caribe, Inc.*, 490 F.Supp.2d 193, 210 (D.P.R.2007) *and Mesnick*, 950 F.2d at 824–25.)

 Consequently, the Magistrate Judge reviewed the evidence provided by the Plaintiff and found that

> ... even though Del Pilar has alleged that a meeting took place in which Vilá decided that Pamias and Mercado would not be reprimanded (Docket No. 52, ¶ 28), the crux of her argument is that De Góngora forced her to discipline Pamias only because he testified in her favor. Docket No. 52, Exhibit A (Del Pilar's Statement Under Penalty of Perjury, ¶¶ 80–83). ***Del Pilar, however, fails to note that De Góngora also asked her to discipline Mercado of whom no mention has been made to the effect that he testified in Del Pi-***

lar's favor. Hence, Del Pilar's pretext allegation as to this particular incident lacks merit.

See Docket No. 75, at pg. 44 (*emphasis ours*).

Furthermore, the Magistrate Judge found that Plaintiff had failed to "directly address her burden at the pretext stage" in her memorandum of law in opposition to Defendants' motion for summary judgment (Docket No. 50), by only focusing "on whether she ha[d] presented sufficient evidence of retaliatory acts to state a prima facie case of retaliation." *See Id.*, at pg. 44 (*emphasis ours*).

Therefore, after review the evidence of record the Magistrate Judge concluded that Plaintiff failed to present

> sufficient evidence from which a reasonable jury could infer that unlawful retaliation was the real and determinative factor behind the alleged retaliatory acts that she claims to have suffered before leaving on medical leave on February, 2005.

See Docket No. 75, pg. 44.

### 2. *Retaliatory acts in 2006 Prima Facie for retaliation claim*

Regarding Plaintiff's alleged retaliatory acts in 2006, after she was reinstated to her position, the Magistrate Judge concluded that Plaintiff meets the first prong of the *prima facie* retaliation claim.[4] As aforementioned, the Magistrate Judge stated that by Plaintiff asserting that as a result of her October 2004 complaint, co-

---

**4.** In sum, Plaintiff alleges that after her reinstatement in 2006, her salary and other economic benefits were affected, that she was not allowed to perform her duties for about a month, that she was divested of the authority and functions that always belonged to her position, that she was not allowed to substitute one of her supervisors on one occasion since Abbott brought another person to substitute him, that certain supervisors of the Department received company cell phones while she did not receive one until she mentioned it during her deposition and that she applied to be transferred to two medical sales representative positions in 2006 and was not selected even though said position were included in her "growth plan". *See* Docket No. 75, pgs. 45–46.

defendant retaliated against her, being said complaint a protected activity under Title VII, Plaintiff meets the first prong. *See Valentin–Almeyda,* 447 F.3d at 94; *see also Benoit,* 331 F.3d at 175; *Ramallo Bros. Printing, Inc.,* 380 F.Supp.2d at 63.

▮ Furthermore the Magistrate Judge concluded that although Plaintiff also satisfies the second prong of the *prima facie* retaliation claim, Plaintiff's "claim that she continued to be retaliated against upon her reinstatement to her employment in February, 2006, fails, . . . as to the third prong of the *prima facie* case of retaliation." *See* Docket No. 75, pg. 47. The Magistrate Judge stated that since

> [m]ore than one year transpired between Del Pilar's complaint in October 2004 and the alleged retaliatory acts she suffered as a result of that complaint when she was reinstated to her position on February, 2006, . . . [t]he length of this period of time defeats any inference of causal connection between her complaint and the resulting adverse employment actions allegedly suffered in 2006.

*See Id.,* at 47 (*citing Mesnick,* 950 F.2d at 828 (holding that a nine-month period between the protected conduct and alleged retaliation undermined the inference of causation); *Haywood v. Lucent Technologies, Inc.,* 323 F.3d 524 (7th Cir.2003)(one year deemed too long to establish causal connection)).

Therefore, the Magistrate Judge concluded that Plaintiff's "retaliation claim against Abbott based on the alleged retaliatory actions she asserts she was victim of when she returned to her job on February, 2006, fails to satisfy the third prong of the *prima facie* case." See Docket No. 75, pg. 47–48.

For the reasons stated above the Magistrate Judge recommended that co-defendant, Abbott Laboratories' request for summary judgment as to Plaintiff's retaliation claim under Title VII, be GRANTED.

**E. Supplemental jurisdiction claims**

▮ Finally, as to the supplemental jurisdiction claims the Magistrate Judge stated that since all of Plaintiff's claims under Title VII should be dismissed, "the court should not exercise [the] supplemental jurisdiction over her associated Commonwealth claims." *See* Docket No. 75, pg. 48 (*emphasis ours*) (*citing Rivera v. Murphy,* 979 F.2d 259, 264 (1st Cir.1992) and *Cullen v. Mattaliano,* 690 F.Supp. 93 (D.Mass.1988)); *see also Rodriguez v. Doral Mortgage Corp.,* 57 F.3d 1168, 1177 (1st Cir.1995)

> ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims.")

In conclusion the Magistrate Judge recommended that both Defendants' Motions for Summary Judgment be **GRANTED.**

**III. Objections to the Magistrate Judge's Report and Recommendation**

**A. Defendant, Abbott Laboratories Partial Objections**

Defendant avers that although the Magistrate Judge recommended the Court not to exercise its supplemental jurisdiction over the state law claims, "judicial economy—the need for an efficient and effective management of resources-requires dismissal—of all claims, federal and state— with prejudice." *See* Docket No. 80, pg. 7. Furthermore, Defendant contends that since Plaintiff

> "chose this forum, actively used it, carried the litigation well beyond preliminary stages, insisted on her state and federal claims; and, at this late stage,

she must face the consequences of her initial choice."

*See Id.* For said reason, Defendant requests the Court to adopt the report and recommendation but to reconsider the recommended dismissal without prejudice of the state claims, and dismiss said claims with prejudice.

### B. Plaintiff's Objections

First, Plaintiff avers that the Magistrate Judge's Report and Recommendation should not be adopted because it does not comply with the summary judgment standard. Plaintiff specifically alleges that

[t]he R & R, incorrectly, adjudicates credibility and completely disregards most of Plaintiff's 'material uncontested facts', supported by references to the record, included in 'Plaintiff's Answer to Abbott's Statement Of Uncontested Facts and Plaintiff's Statement Of Uncontested Facts', Docket 52. The Magistrate Judge in this case ignored and omitted most of these truly 'material facts' although they were supported by Plaintiff's Statement under Penalty of Perjury and/or by other Statements under penalty of Perjury, documents and depositions.

*See* Docket No. 81, pg. 1 (*emphasis ours*).

Second, Plaintiff avers that although the Magistrate Judge recommended for summary judgment to be entered, there are still genuine issues of material facts, especially of motive and intent that preclude this Court from granting Defendants' motions for summary judgment.

Third, Plaintiff avers that after a careful reading of plaintiff, Janette Del Pilar's Statement of Under Penalty of Perjury, Docket No. 52, Exhibit A, this Court will agree that the testimony found therein, if presented to "any fair-minded jury" could easily return a verdict in Plaintiff's favor. *See* Docket No. 81, pg. 2.

Fourth, Plaintiff avers that the Magistrate Judge

ignored and omitted most of the facts alleged in Plaintiff's Statements of Material Facts, that affirmatively point to specific incidents and facts that are material to the consideration of the issues presented in the instant case and evidence the existence of an authentic dispute as to whether, in this case, Del Pilar was a victim of discrimination and retaliation.

*See* Docket No. 81, pg. 3 [5].

Fifth, Plaintiff avers that as to the Title VII sex discrimination claim, if the evidence of record is considered as a whole, instead of dividing it into three categories, "a fair jury, might fully evidence a strong inference of discrimination and may probably elicit a verdict for Plaintiff." *See* Docket No. 81, pg. 23. Plaintiff further avers that all of the evidence submitted by the Plaintiff reflects an intent to discriminate. Moreover, Plaintiff states that

in gender-based harassment cases, like the one at bar, the conduct needs not to be overtly sexual to be actionable and a broad range of conduct that can contribute to the creation of a hostile work environment may be considered by the fact-finder; the comments need not be

---

**5.** Throughout the next 19 pages (Docket No. 81, pgs. 3–22), Plaintiff makes a restatement of all the facts alleged by the Plaintiff either in her Statement of Uncontested Facts (Docket No.52), Deposition Transcript (Docket Nos. 62, Exhibit 2 and 5)and/or Statement Under Penalty of Perjury (Docket No. 52, Exhibit A), that in her opinion the Magistrate Judge ig-

nored and omitted, which as aforementioned "affirmatively point to specific incidents and facts that are material to the consideration of the issues presented in the instant case and evidence the existence of an authentic dispute as to whether, in this case, Del Pilar was a victim of discrimination and retaliation". *See* Docket No. 81, pg. 3.

motivated by sexual desire and the accumulated effect of incidents of humiliating, offensive comments directed at women and work-sabotaging pranks, taken together, may constitute a hostile work environment claim.

*See* Docket No. 81, pg. 26 (*citing Williams v. General Motors Corp.,* 187 F.3d 553 (6th Cir.1999)).

Sixth, Plaintiff avers that regarding her retaliation claim, Plaintiff "has offered sufficient material facts to evidence, that she has been a victim of retaliation after she filed her complaint against Ruiz to Abbott's management and until past February 2006." *See* Docket No. 81, pg. 26. Plaintiff further avers that although the Magistrate Judge divided the alleged retaliatory acts in two different periods and dismissed said claims for two different reasons, "the retaliation was a continuous violation while she was reported to work, interrupted only while she was away in sick leave, and resumed by Abbott when she came back to work, and as such should be examined." *See Id.,* at pg. 26. Moreover, Plaintiff contends that although the Magistrate Judge found that Plaintiff established a prima facie claim of retaliation for the alleged retaliatory acts of 2005, the Magistrate incorrectly concluded that Plaintiff failed to present sufficient evidence to prove that Defendant's legitimate, business-related and non-discriminatory reasons to rebut Plaintiff's prima facie case of retaliation were a pretext for retaliation. Plaintiff further contends that the Magistrate Judge erred by also granting summary judgment dismissing the alleged retaliatory acts of 2006, based on the fact that more than one (1) year had passed since the Plaintiff had filed the complaint

against Cesar Ruiz to Abbott's management in October 2004. Furthermore, Plaintiff avers that although the Magistrate Judge concluded that Plaintiff failed to meet the third prong of the prima facie retaliation claim of the 2006 retaliatory acts, Plaintiff's retaliation claims are detailed in Plaintiff's Statement Under Penalty of Perjury in paragraphs 123–147, as well as the pretext evidence.[6] Additionally, Plaintiff alleges that since she filed the first complaint to Abbott's management on October 2004, then filed the ADU charge on May 2005 stating that the final retaliation act was on February 2005 and then filed the instant Complaint on May 2006 stating that the retaliatory acts occurred after February 2006 being the last occurrence on December 2006, Plaintiff "has evidence a continuos claim for a continuos violation that should not be dismissed on grounds of lack of insufficient proximity." *See* Docket No. 81, pg. 27.

Seventh, Plaintiff avers that although the Magistrate Judge recommended for the supplemental jurisdiction claims to be dismissed, by

construing the record in the light most favorable to Plaintiff and resolving all reasonable inferences in Plaintiff's favor, this Honorable Court must conclude that, under PR Law 100 standards, Plaintiff has presented enough evidence to send this hostile environment for political affiliation claim to a jury.

*See* Docket No. 81, pg. 30.

Eight, Plaintiff contends that although the Magistrate Judge recommended for the Title VII claims against co-defendant Cesar Ruiz to be dismissed pursuant to the fact that Title VII does not provide for individual liability, said issue has still not

---

**6.** From pages 27–29 of *Plaintiff's Objection to Report and Recommendation* (Docket No. 81), Plaintiff restates the pretext evidence that she has submitted into record for the 2005 retalia-

tory acts, specifically through her Statement of Material Facts and Opposition to Summary Judgment.

been settled among the Circuit Courts and the U.S. Supreme Court has remained silent. Furthermore, Plaintiff avers that notwithstanding said fact, the claims under state statutes do impose liability on supervisors for discriminatory acts. Moreover, Plaintiff avers that since both the federal and state law claims derive from the same set of facts, this Court should exercise its supplemental jurisdiction over the state law claims that remain against co-defendant Cesar Ruiz.

For the reasons stated above, Plaintiff requests that Court to reject the Report and Recommendation and deny Defendants Motions for Summary Judgment.

## IV. Analysis

After reviewing the instant case's record, all of the pending motions and reviewing de novo the portions of the Magistrate Judge's Report and Recommendation to which both parties have expressed objections, the Court agrees in *toto,* with the recommendations made by Magistrate Judge Marcos E. Lopez, albeit sometimes under alternate grounds. The Court finds that after taking into consideration all of Plaintiff's and Defendant's objections, the Court has reached the same conclusions as those reached by Magistrate Judge Lopez in his Report and Recommendation. In sum, the Court agrees with the Magistrate Judge's conclusions for the following reasons:

● **Title VII claims against Cesar Ruiz, his wife and the conjugal partnership constituted by them**

Although the First Circuit Court of Appeals has not yet decided whether an individual may be found liable under Title VII, this District as well as "... most circuits have held that no personal liability can be attached to agents or supervisors under Title VII." *See Sanchez Ramos v. Puerto Rico Police Department,* 392 F.Supp.2d at 179 FN 6; *see also Gastineau v. Fleet Mortgage Corp.,* 137 F.3d 490, 493 (7th Cir.1998); *Lissau v. Southern Food Serv., Inc.,* 159 F.3d 177, 180–81 (4th Cir.1998); *Wathen v. General Elec. Co.,* 115 F.3d 400, 405–06 (6th Cir.1997); *Dici v. Com. of Pa.,* 91 F.3d 542 (3rd Cir.1996); *Tomka v. Seiler Corp.,* 66 F.3d 1295 (2nd Cir.1995); *Gary v. Long,* 313 U.S.App. D.C. 403, 59 F.3d 1391 (D.C.Cir.1995).[7]

Consequently, this Court, as it has in the past, holds that "Title VII's statutory structure suggests that Congress did not intend to impose individual liability over supervisors or agents of employers." *See Id. (quoting Padilla Cintron v. Rossello Gonzalez,* 247 F.Supp.2d 48 (D.P.R.2003) and *citing Flamand v. American International Group, Inc.,* 876 F.Supp. 356, 361–64 (D.P.R.1994)).

For said reasons, co-defendant's, Cesar Ruiz, his wife and the conjugal partnership constituted by them, motion for summary judgment is hereby **GRANTED** as to the Title VII claims. Consequently, the Title

---

**7.** Basically the definition of employer was intended for the employer not to allege that the liability belonged to the employee causing the discrimination thereby liberating the employer from liability. Furthermore, not only is the employee not covered in the definition, the definition excludes small corporations in terms of number of employees (less than 15 employees); yet would ironically include individual employees. Further, there is absolutely no legislative history to include individual employees as employers. Finally, to include an individual employee vs. an individual, congress would need to find a Constitutional reason to justify Congressional Constitutional authority to justify a law authorizing employee vs. employee liability under *United States v. Lopez,* 514 U.S. 549, 552–568, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). There is absolutely nothing in the law justifying the employee vs. employee discrimination claim and if there is none, the Court should not invade legislative authority.(The last analysis was provided by this Court).

VII claims against the aforementioned Co-defendants, is hereby **DISMISSED with PREJUDICE.**

- **Title VII hostile work environment-sex and political discrimination claims against Abbott Laboratories**

Regarding Plaintiff's Title VII hostile work environment-sex and political discrimination claims against co-defendant Abbott Laboratories, the Court finds that although we agree with the Magistrate Judge's conclusions, Plaintiff's aforementioned claims may also be dismissed pursuant to the defense stated in *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), commonly known as the *Faragher* defense, alleged in co-defendant's *Memorandum of Law in Support of Motion for Summary Judgment* (Docket No. 39).

After reviewing all of the facts alleged by the Plaintiff the Court found the following uncontested facts:

1. Plaintiff avers that she began as the Senior Shipping Supervisor on February 2002, and since then she started having problems with her supervisor, co-defendant Cesar Ruiz. *See* Docket No. 52, Exhibit A, ¶¶ 2–4.

2. Abbott Laboratories has a written Work Place Harassment Policy (antidiscrimination and antiharassment policy), which provides different channels to canalize complaints, which Plaintiff has been aware of through her tenure as Senior Shipping Supervisor in Abbott. *See* Docket No. 39, ¶ 3; *see also* Plaintiff's Deposition Transcript, Docket No. 62, Exhibit 2, pgs. 49–53.

3. Plaintiff complained to Abbott's management of the alleged hostile work environment being allegedly caused by co-defendant Cesar Ruiz, on October 19, 2004. *See Id.,* at ¶ 6.

4. After Plaintiff officially complained on October 19, 2004, "Gloria Ojeda, Abbott's Planning and Logistics Manager, ordered Nancy Blay, Human Resources Section Manager, to conduct an investigation of", Plaintiff's hostile work environment complaint. *See* Docket No. 52, ¶ 7.

5. "[O]n October 20, 2004, Blay met with Del Pilar to discuss the allegations presented in her complaint." *See* Docket No. 39, ¶ 15 *(emphasis ours ); see also* Docket No. 52, ¶ 15(b).

6. On October 20, 2004,

"De Gongora and Ojeda met with Ruiz, informed him that Del Pilar had presented an internal complaint against him, warned him that the Company would be investigating her complaint, instructed him on the company policy against discrimination and harassment, and asked him to limit his communications with Del Pilar to business-related matters."

*See* Docket No. 39, ¶ 16.

7. Plaintiff stated that she tried to cope with Mr. Ruiz' behavior for a long time and that she didn't complain about it before October 19, 2007, because she knew that everybody tolerated it. *See* Docket No. 50, pg. 12.

8. Moreover, Plaintiff stated that "[i]n short, she did not [complain] before because she feared that she would be retaliated and her growing opportunities in Abbott would be hindered." *See Id.* *(emphasis ours ).*

9. Plaintiff avers that before she officially complained she managed to maintain a satisfactory performance and she received satisfactory ratings and salary increases. *See* Docket No. 52, ¶ 10.

10.

On December 17, 2005, De Gongora, Ojeda, Blay and Emilio Vilá, Abbott's Employee Relations Manager ("Vilá"),

met with Ruiz to confront him with the contents of his e-mail account and to discuss the preliminary findings of Abbott's investigation of Del Pilar's complaint. He was informed that an investigation of the contents of his e-mail account evidenced that he violated several of Abbott's policies regarding the use of the Company's information systems. Also, he was informed that the contents of his e-mail account would be submitted to Abbott's Ethics Committee for their consideration.

*See* Docket No. 39, ¶ 23.

11.

Ruiz then asked to meet privately with Vilá. During the meeting, Ruiz told Vilá and the others that he was going to retire, effective January 31, 2005. Additionally, he asked and was allowed to use accrued and unused vacation time from that day, December 17, 2004 until January 31, 2005, the effective date of his retirement. Ruiz's last day of physical work at Abbott was on December 17, 2004. As of that date, Del Pilar started reporting to De Góngora.

*See Id.,* at ¶ 24; *see also* Docket NO. 52, ¶ 9; *see also* Plaintiff's Deposition Transcript, Docket No. 62, Exhibit 2, pg. 152.

12.

On January 25, 2005, a meeting was held with Del Pilar to discuss the findings of the investigation of her two(2) complaints. De Góngora, Vilá, Blay, Ojeda, Del Pilar and an employee who Del Pilar requested to be presented, Maria Isabel Sanchez, attended. Del Pilar was informed that Ruiz would no longer work for Abbott and that she would continue to report directly to De Góngora.

*See Id.,* at ¶ 25; *see also* Docket No. 52, ¶ 25.

13. To this date, Plaintiff continues to occupy the position of Senior Shipping Su-

pervisor in Abbott Laboratories. *See* Docket No. 39, ¶ 2.

14. Throughout Plaintiff's tenure as Senior Shipping Supervisor, Plaintiff has never been discharge, demoted, or undesirably reassigned. *See* Docket No. Docket No. 39, ¶ 5; *see also* Docket No. 52, ¶ 5h and ¶ 5i.

After reviewing the aforementioned facts, the Court harbors no doubt that in the instant case, the *Faragher* defense alleged by co-defendant in the *Memorandum of Law* (Docket No. 39), is applicable.

Prior to *Ellerth* and *Faragher,* cases had established the standard for employer liability for co-worker harassment of the plaintiff employee. Ordinarily, where the harassment is by a non-supervisory co-worker, the employer is liable only if the plaintiff can show that the employer "knew or should have known of the charged ... harassment and failed to implement prompt and appropriate action." *Crowley v. L.L. Bean, Inc.,* 303 F.3d 387, 401 (1st Cir.2002) (quoting *White v. N.H. Dep't of Corr.,* 221 F.3d 254, 261 (1st Cir.2000)).

As to actionable discrimination by supervisors, *Faragher* articulated some clear lines:

(1) "An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Faragher,* 524 U.S. at 807, 118 S.Ct. 2275, 141 L.Ed.2d 662.

(2) Where "no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence." *Id.*

(3) "No affirmative defense is available ... when the supervisor's harassment culminates in a tangible employment ac-

tion, such as discharge, demotion, or undesirable reassignment." *Id.* at 808, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662.

(4) The affirmative defense, when available, "comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any ... harassing behavior, and (b)that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.* at 807, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662. The employer bears the burden of proof as to both elements. *Id.* at 807–08, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662.

(5) As to the first element of the defense, proof of an anti-harassment policy with a complaint procedure available to employees, while not necessarily dispositive, is relevant. *Id.* at 807, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662.

(6) As to the second element of the defense, proof that the employee failed to meet his obligation of using reasonable care is not limited to an unreasonable failure to use such a procedure, although such proof will normally suffice to meet the employer's burden. Id. at 807–08, 118 S.Ct. 2275, 141 L.Ed.2d 662. *See also Reed v. MBNA Mktg. Sys., Inc.,* 333 F.3d 27, 32 (1st Cir.2003); *Marrero v. Goya of P.R., Inc.,* 304 F.3d 7, 20 (1st Cir.2002).

*See Arrieta–Colon v. Wal–Mart Puerto Rico, Inc.,* 434 F.3d 75, 85–86 (1st Cir. 2006).

When the aforementioned factors are applied to the uncontested facts applicable to this case, co-defendant Abbott Laboratories shall not be held liable for the hostile work environment allegedly suffered by the Plaintiff due to Mr. Ruiz' alleged sex and political discrimination. As stated above, it is uncontested that the alleged harasser, Mr. Ruiz was Plaintiff's supervisor from February 2002 up to December 17, 2004, which was his last day of physical work at Abbott Laboratories. It is also uncontested that no tangible employment action was taken against the Plaintiff by Mr. Ruiz, since Plaintiff has never been discharged, demoted, or undesirably reassigned. Therefore, the Court finds that co-defendant Abbott Laboratories, may raise the affirmative defense provided in *Faragher,* to protect itself from the alleged liabilities or damages, caused by Mr. Ruiz' alleged harassment.

Since the *Faragher* defense, is available to co-defendant Abbott Laboratories, the Court must now determine whether the co-defendant has proven by a preponderance of the evidence the

> two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any ... harassing behavior, and (b)that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*See Arrieta–Colon,* 434 F.3d at 85–86.

As aforementioned, it is uncontested that Abbott Laboratories has a written Work Place Harassment Policy (antidiscrimination and antiharassment policy), which provides different channels to canalize complaints, which Plaintiff has been aware of through her tenure as Senior Shipping Supervisor in Abbott. It is also uncontested that Plaintiff complained to Abbott's management of the alleged hostile work environment on October 19, 2004. *See* Docket No. 39, ¶ 3–¶ 6; *see also* Plaintiff's Deposition Transcript, Docket No. 62, Exhibit 2, pgs. 49–53. Furthermore, it is uncontested that after Plaintiff officially complained on October 19, 2004, "Gloria

Ojeda, Abbott's Planning and Logistics Manager, ordered Nancy Blay, Human Resources Section Manager, to conduct an investigation of", Plaintiff's hostile work environment complaint and consequently "on October 20, 2004, Blay met with Del Pilar to discuss the allegations presented in her complaint.". *See* Docket No. 52, ¶ 7; *see* also Docket No. 39, ¶ 15; Docket No. 52, ¶ 15(b). Moreover, it is uncontested that on October 20, 2004,

> De Gongora and Ojeda met with Ruiz, informed him that Del Pilar had presented an internal complaint against him, warned him that the Company would be investigating her complaint, instructed him on the company policy against discrimination and harassment, and asked him to limit his communications with Del Pilar to business-related matters.

*See* Docket No. 39, ¶ 16. It is further uncontested that on December 17, 2005, only two (2) months after Plaintiff had filed the complaint to Abbott's management,

> "De Gongora, Ojeda, Blay and Emilio Vilá, Abbott's Employee Relations Manager ('Vilá'), met with Ruiz to confront him with the contents of his e-mail account and to discuss the preliminary findings of Abbott's investigation of Del Pilar's complaint."

*See* Docket No. 39,¶ 23. After said meeting "Ruiz told Vilá and the others that he was going to retire, effective January 31, 2005," but that if he was allowed to use his accrued and unused vacation time he would leave Abbott that same day. *See Id.,* at ¶ 24; *see also* Docket NO. 52, ¶ 9; *see also* Plaintiff's Deposition Transcript, Docket No. 62, Exhibit 2, pg. 152. Abbott agreed and "Ruiz's last day of physical work at Abbott was on December 17, 2004. As of that date, Del Pilar started reporting to De Góngora." *See Id.*

For said reasons, the Court finds that co-defendant has proven by a preponderance of the evidence the first element of the *Faragher* defense by "exercis[ing] reasonable care to prevent and correct promptly any ... harassing behavior". *See Arrieta–Colon,* 434 F.3d at 85–86.

As to the second element the Court finds that Plaintiff "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *See Id.* Although Plaintiff states that she didn't complain about Mr. Ruiz' behavior before October 19, 2007, because she knew that everybody tolerated it and that because she feared she would be retaliated thereby hindering her growing opportunities in Abbott, the Court finds that said allegations of fear are insufficient to shoulder the burden of summary judgment and counter [Abbott's] evidence of diligence in instituting and following its own procedures to eradicate sexual harassment in the workplace. *See Reed v. MBNA Marketing Sys. Inc.,* 333 F.3d 27, 35 (1st Cir.2003) (more than ordinary fear and embarrassment is needed for a plaintiff to overcome his/her duty to utilize the employer's established complaint procedures to report sexual harassment); *Matvia v. Bald Head Island Management, Inc.,* 259 F.3d 261, 269–70 (4th Cir.2001)(holding that a "nebulous fear" of negative reactions by coworkers is not enough to deprive a company of their affirmative defense); *Shaw v. AutoZone, Inc.,* 180 F.3d 806, 813 (7th Cir.1999) ("[a]n **employee's subjective fears of confrontation, unpleasantness or retaliation do not alleviate the employee's duty under Ellerth to alert the employer to the allegedly hostile environment.**").

*See Ortiz v. Hyatt Regency Cerromar Beach Hotel, Inc.,* 422 F.Supp.2d 336, 344

(D.P.R.2006)(*emphasis ours*). Therefore, the Court finds that if Plaintiff's alleged harassment started to occur when she began working as Senior Shipping Supervisor under the supervision of Mr. Ruiz, but it was not until October 19, 2004 that she complain about it to Abbott's management, then co-defendant has proven by a preponderance of the evidence that Plaintiff "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *See Arrieta–Colon,* 434 F.3d at 85–86; *see also Ortiz,* 422 F.Supp.2d at 344.

For the reasons stated above, the Court finds that the *Faragher* defense "shields [co-defendant Abbott Laboratories] from liability arising out of the alleged [sex and political] harassment (hostile work environment) perpetrated by its supervisor[ ]" Mr. Ruiz. *See Ortiz,* 422 F.Supp.2d at 344 (*emphasis ours*).

Therefore, co-defendant Abbott Laboratories' request for summary judgment (Docket No. 39) dismissing Plaintiff's Title VII claims of hostile work environment/sex and political discrimination is hereby **GRANTED.** Consequently, Plaintiff's Title VII hostile work environment/sex and political discrimination claims against Abbott Laboratories are hereby **DISMISSED with PREJUDICE.**

- **Title VII hostile work environment-retaliation claims against Abbott Laboratories**

As aforementioned, after reviewing *de novo* all of Plaintiff's objections to the Magistrate Judge's recommendations as to Plaintiff's retaliation claims under Title VII, the Court agrees *in toto,* with the recommendation made by Magistrate Judge Marcos E. Lopez, of granting co-defendant Abbott Laboratories' request for summary judgment as to the retaliation claims under Title VII. The Court finds that after taking into consideration all of Plaintiff's objections, the Court has reached the same conclusion as the reached by the Magistrate Judge in his Report and Recommendation. "Thus, following the words of wisdom of the First Circuit Court of Appeals that 'when a lower court [Magistrate Judge] produces a comprehensive, well-reasoned decision, an appellate court should refrain from writing at length to no other end than to hear its own words resonate'". *See Vega–Morales v. Commissioner of Social Security,* 380 F.Supp.2d 54, 56 (2005) (*quoting Lawton v. State Mut. Life Assu. Co. of Am.,* 101 F.3d 218, 220 (1st Cir.1996)); *see also In re San Juan Dupont Plaza Hotel Fire Litig.,* 989 F.2d 36, 38 (1st Cir.1993)("Where, as here, a trial court has produced a first-rate work product, a reviewing tribunal should hesitate to wax longiloquence simply to hear its own words resonate.").

Notwithstanding, the Court deems necessary to state that even if Plaintiff's allegations regarding all of the alleged retaliatory acts were viewed as a whole, in other words were not divided into two different periods, the Court finds that the Plaintiff has not only failed to "present sufficient evidence from which a reasonable jury could infer that unlawful retaliation was the real and determinative factor behind the alleged retaliatory acts", as found by the Magistrate Judge, but Plaintiff has failed to present a *prima facie* case of retaliation. *See* Docket No. 75, pg 44.

Therefore, the Court **ACCEPTS and ADOPTS** by reference, the Magistrate's recommendations (Docket No. 21), to the instant Order. Consequently, co-defendant's, Abbott Laboratories request for summary judgment (Docket No. 39), as to Plaintiff's Title VII retaliation claims is hereby **GRANTED.**

- **Supplemental jurisdiction claims**

Finally, after reviewing *de novo* all of Plaintiff's and co-defendant Abbott Laboratories' objections to the Magistrate Judge's recommendations as to Plaintiff's state law claims, the Court agrees *in toto,* with the recommendation made by Magistrate Judge Marcos E. Lopez, of not exercising the supplemental jurisdiction since through the instant Opinion and Order, the Court is dismissing with prejudice all of Plaintiff's federal claims. *See Rivera v. Murphy,* 979 F.2d 259 (1st Cir.1992). The Court is of the opinion that pursuant to the doctrine of *Rodriguez v. Doral Mortgage, see infra,* the determination of the Court is timely in terms of the longevity of the instant case and the Court enjoys discretion to dispel the supplemental jurisdiction of the state claims.

Moreover, the Court finds that after taking into consideration all of Plaintiff's and Co-defendant's objections, the Court has reached the same conclusion as the one reached by the Magistrate Judge in his Report and Recommendation. *See In re San Juan Dupont Plaza Hotel Fire Litig.,* 989 F.2d at 38("Where, as here, a trial court has produced a first-rate work product, a reviewing tribunal should hesitate to wax longiloquence simply to hear its own words resonate.").

Therefore, Plaintiff's state law claims are hereby **DISMISSED without PREJUDICE.**

### V. Conclusion

After reviewing all of the pending motions and reviewing *de novo* the portions of the Magistrate Judge's Report and Recommendation to which the Parties have expressed objections, the Court agrees *in toto,* with the findings and recommendations made by Magistrate Judge Marcos E. Lopez. The Court finds that after taking into consideration all of Plaintiff's and Defendant's objections, the Court has reached the same conclusions as those

reached by the Magistrate Judge in his Report and Recommendation. For the reasons stated below, the Court **ACCEPTS and ADOPTS** by reference, the Magistrate's *Report and Recommendation* (Docket No. 21), to the instant Order. Consequently, the Defendants' Motions for Summary Judgment (Docket No. 36 and 39) are hereby **GRANTED.**

Hence, Plaintiff's Title VII claims against all of the herein Defendants are hereby **DISMISSED with PREJUDICE** and Plaintiff's state law claims are hereby **DISMISSED without PREJUDICE.** Judgment shall be entered accordingly.

**IT IS SO ORDERED AMENDING NUNC PRO TUNC OPINION AND ORDER DATED September 30th 2007.**